UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALVIN ERIC HARRIS | CIVIL ACTION |
| VERSUS | NO. 12-2659 |
| MARLIN GUSMAN ET AL. | SECTION "H" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Calvin Eric Harris, is a prisoner incarcerated in the Orleans Parish Prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, OPP Sgt. Lumar, Deputy Randolph, Deputy Baquet, Deputy West and Dr. Gore. Harris alleges that unsanitary conditions at OPP have resulted in respiratory ailments. He seeks monetary compensation and injunctive relief, including examination by a respiratory specialist. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On December 18, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Harris confirmed that he asserts a single claim in this case, that he was exposed to unconstitutional conditions of confinement while incarcerated in the tents unit of OPP. Harris explained that he makes no claims in this case based upon a September 13, 2012,

fall he suffered in OPP, despite his mention of that incident in some of the written submissions he has made in this case. Record Doc. No. 7. Harris clarified that the fall, the injuries he suffered in that fall and the medical care he received for those injuries are the subject of a separate pending lawsuit and should not be considered as part of this lawsuit, which relates exclusively to alleged unsanitary conditions and related problems.

Harris testified that he has been incarcerated in OPP since he was extradited to New Orleans from Las Vegas on June 29, 2012. He testified that he has been exposed to unsanitary conditions in the tents unit at OPP and that he has been permitted to have outdoor recreation only three (3) times while in OPP. He testified that he is currently incarcerated as a pretrial detainee based upon forgery charges and is awaiting trial that was scheduled to begin on January 25, 2013.

Harris testified that he was initially placed in Tent 1 and then moved to Tent 6 of the OPP unit. He said he was in Tent 1 for about 100 days and then moved to Tent 6, where he stayed until he was moved from the tents to another OPP unit in November 2012. He confirmed that he was in the OPP tents for a total of only about five (5) months and that his claim of unsanitary conditions relates exclusively to the tents.

Harris described the unsanitary conditions in the tents, which he described in detail in his written submissions, Record Doc. Nos. 3, ¶ IV at pp. 4A-4B; and 15, as including dust and dirt, dirty and inadequate ventilation devices, dirty air filters, old electrical and water pipes, bad air, only two shower facilities for use by more than 80 inmates, mold

and mildew in the showers, lack of soap and cleaning supplies and other unsanitary conditions. He complained that the eating utensils provided to the inmates with their food were cleaned in the moldy and mildewed shower areas.

Harris testified that he has not been provided with adequate cleaning materials, such as bleach or disinfectant, to clean the showers. He testified that the only thing provided to the inmates to clean the showers was a product called "Smell Good," which he complained was not a cleaning or disinfectant agent, although the deputies say it is, but instead is nothing more than a "fruity bubble gum smell" material designed not to clean, but only to cover the bad smell. He said this "Smell Good" product was given to the inmates themselves by deputies every day so that the inmates could use it to clean the showers. He complained that no deputies or ranking officers were ever involved in supervising the inmates when they clean the showers daily to make sure that the showers have in fact been thoroughly cleaned. Harris also alleged that whenever he submits a grievance to complain about the unsanitary conditions, he does not receive an adequate response. "Any time I have a credible grievance, it's never answered," he said.

Asked how often he was permitted to take a shower while in the tents, Harris responded that he took a shower "maybe once every three days."

Harris testified that in addition to the "Smell Good," the inmates were also provided with sponges and mops to clean the showers every day, but he complained that the "Smell Good" is neither bleach nor disinfectant and that within a few hours after the

inmates use it to clean the bathroom facilities in the morning, the facilities "smell like urine again."

As to the ventilation problems, Harris testified that the tents are so dusty and dirty that it takes only about a week for the ventilation filters and ducts to get filled up with dust and dirt, but the vents are cleaned only every six weeks or so. He stated that the vents are for the air-conditioning system in the tents, but the dirt and dust are so heavy that the light fixtures and water and electrical pipes in the facility are covered in dirt. Harris complained that the dirt and dust are particularly harmful because he has only been provided with outdoor recreation on only three (3) occasions. He further complained that his outdoor recreation consisted only of being taken to a "boxed-in" area where the inmates can only stand around and not do much physical exercise.

Harris alleged that he has experienced health problems as a result of these conditions, including throat itching, coughing, nose bleeds, headaches and trouble sleeping. He confirmed that he has been taken to the OPP medical unit and seen by a nurse-practitioner for these problems, but he said the treatment was minimal and he was then merely returned to the tents. He complained that he did not see a doctor or a respiratory specialist. He clarified that this minimal treatment occurred <u>after</u> he was taken to the hospital in September and before he was taken to the hospital again in November after he fell.

Harris speculated that based on what he has seen in the newspaper and on television, he does not believe that conditions at OPP will be adequately addressed until a pending proposed federal consent decree being addressed in a separate case is finalized.[1]

As to the acts or omissions of each named defendant, Harris testified that he has had no personal contact with Sheriff Gusman, but that the sheriff should be held liable to him for conditions in the OPP tents because he is the overall supervisor of the jail. As to Sergeant Lumar, Harris stated that Lumar was the supervisor of Tent 1, where Deputy Randolph works. He said that Deputies Barquette and West work in Tent 6. Harris testified that he named Dr. Gore as a defendant so that Dr. Gore can verify that the conditions in Tent 6 "can lead to a medical condition." He testified that he has been seen by Dr. DiLeo at OPP for injuries suffered in his fall, but not for the respiratory and other problems that he alleges are the result of the unsanitary conditions.

Plaintiff's medical records produced by defendants in response to my order indicate that Harris has been seen by medical care providers, including two trips to the hospital, on numerous occasions for complaints related to falls, alleged respiratory difficulties, "hearing voices" and suicidal ideation.  Record Doc. Nos. 6 and 16.

---

[1] Jones v. Gusman, Civil Action No. 12-859 "I"(5).

ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a

claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II. CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions and inadequate outdoor recreation during his five months of incarceration in the OPP tents. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

---

[2] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), applies. <u>Olabisiomotosho</u>, 185 F.3d at 526; <u>Tamez v. Manthey</u>, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Harris's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need

-10-

for sanitary conditions." <u>Alexander v. Tippah County</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 847. A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Harris's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Harris alleges no serious harm or risk of serious harm in the constitutional sense, and the court can

perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Harris's allegations about dirty and dusty conditions at OPP fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply

because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez, 522 F.3d at 560.

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions in cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A

filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991) (emphasis added)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Harris do not rise to the level of a constitutional violation. The conditions he experienced in the OPP tents were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution.

As to his allegation that the dirty conditions have caused him to suffer various ailments, his medical records do not support the conclusion that any of these conditions was serious or even related to any unsanitary condition. At a minimum, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).

Any harm that Harris may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation. See, e.g.,

Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); cf. Barker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). None of Harris's injuries rise to the level of serious medical needs for constitutional purposes.

Similarly, his complaints about inadequate outdoor exercise fail to state a cognizable Section 1983 claim of violation of his constitutional rights. Harris has not presented any evidence that his limited outdoor exercise caused any serious health hazard. His medical records reflect no such deleterious health effect. Harris merely speculates that he would have benefitted from more outdoor exercise. This speculation is insufficient to establish either a substantial risk of serious harm or any actual injury.

See <u>Haralson v. Campuzano</u>, 356 F. App'x 692, 697 (5th Cir. 2009) (inmate who was denied out-of-cell exercise for seven months while in the prison infirmary failed to raise a genuine issue of material fact as to whether he suffered a serious injury sufficient to constitute an Eighth Amendment violation); <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 561 (5th Cir. 2008) (Assuming the evidence created a fact issue whether plaintiff suffered from muscle atrophy, stiffness, loss of range of motion, and depression as a result of lack of out-of-cell exercise for 13 months, "there is nonetheless no indication these conditions posed a substantial risk of serious harm. The district court properly concluded there was no genuine issue as to whether Hernandez suffered a 'serious illness or injury' sufficient to constitute an Eighth Amendment violation."); <u>Doolittle</u>, 2010 WL 22552, at *6 ("[A]lthough the plaintiff alleged in his Complaint that he suffered muscle atrophy as a result of his confinement for 2 1/2 months without exercise, there is no evidence to support this conclusory assertion. The plaintiff has provided nothing to support his claim of muscle atrophy or to show its extent or duration," and his medical records revealed no complaints about muscle atrophy during the relevant time period.).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement or outdoor exercise. For all of the foregoing reasons, plaintiff's complaints in this case about the conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___8th___ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.